916 A.2d 984

Sylvia B. PIVEN, et al.

v.

COMCAST CORPORATION, et al.

No. 48, Sept. Term, 2006.

Court of Appeals of Maryland.

Feb. 9, 2007.

Marshall N. Perkins (Charles J. Piven, Brower, Piven, Carl R. Gold, Law Offices of Carl R. Gold, Towson, on brief), for petitioners.

Adam S. Caldwell (Robert G. Scott, K.C. Halm, Cole, Raywid & Braverman, L.L.P., Washington, DC, Stephen J. Nolan, Stephen J. Nolan, Chtd., Baltimore, on brief), for respondents.

Argued before BELL, C.J., RAKER,*WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

WILNER, J.

The issue before us is whether, in an action for trespass to land located solely in one county, it is permissible to join an action for trespass to land located solely in a different county when the two parcels of land are not contiguous and have no common ownership. The Circuit Court for Baltimore County said "no," the Court of Special Appeals said "no," and we shall say "no."

## BACKGROUND

In May, 2004, Sylvia Piven, a resident of, and owner of real property located solely in, Baltimore County, and Stanley and Donna Chaplinski, residents of, and owners of property locat-

---

* Wilner, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

ed solely in, Baltimore City, filed an action in the Circuit Court for Baltimore County against fifteen named Comcast companies and 99 unnamed "John Doe Comcast Corporation[s]" one or more of which were alleged to have unlawfully placed or directed the placement of one or more cables or wires across the plaintiffs' land without the plaintiffs' permission.[1] The action purported to be a class action on behalf of not only Piven and the Chaplinskis but "all persons who own property (or otherwise control the relevant possessory interest in the property)" upon which any of the defendants, whom the plaintiffs referred to collectively as Comcast, had run wires as alleged. That would include plaintiffs and property throughout the State; the complaint alleges that the class is "composed of thousands, and possible tens of thousands, of members."

The complaint contained three causes of action. Count I was for trespass—that by stringing its wires across the plaintiffs' properties without permission from the plaintiffs who own those properties, one or more of the various Comcast defendants entered upon the land unlawfully, intruded upon

---

1. The named defendants were the Comcast Corporation, a Pennsylvania corporation with its principal office in Philadelphia; Comcast of Maryland, a Colorado corporation with its principal office in Philadelphia; Comcast of Baltimore City, L.P., a limited partnership with its principal office in Denver; Comcast of Baltimore City, Inc., a Maryland corporation; Comcast Telephony Communications of Maryland, a Maryland corporation; Comcast of Delmarva, a Delaware corporation with its principal office in Miami; Comcast Business Communications, Inc., a Pennsylvania corporation with its principal office in Bala Cynwyd, Pennsylvania; Comcast of Howard County, a Maryland corporation; Comcast Cable of Maryland, Inc., a Delaware corporation with its principal office in Philadelphia; Comcast of Harford County, L.L.C., a Maryland corporation; Comcast of Maryland Limited Partnership, a Maryland limited partnership; Comcast of Elkton, Inc., a Delaware corporation with its principal office in Englewood, Colorado; Comcast Phone of Maryland, Inc., a Colorado corporation with its principal office in Englewood, Colorado; Com cast Cable Communications, Inc., "perhaps, a Delaware entity" with its principal office in Philadelphia; Comcast of Eastern Shore, Inc., a Delaware corporation with its principal office in Tulsa, Oklahoma, and every other Comcast or related entity, currently unidentified that "does, or may have, liability for the matters complained of herein," which the plaintiffs refer to as "John Doe Comcast Corporation 1–99."

the respective plaintiffs' possessory interest in the land, and caused them to suffer unspecified damages. As relief, the plaintiffs asked for compensatory damages, an injunction either granting the plaintiffs legal ownership of the wires over their property or requiring Comcast to remove the wires, interest, and attorneys' fees. Count II, which incorporated all of the previous averments relating to the trespass, sought damages for unjust enrichment, the basis for which was that it would be inequitable for Comcast to retain the benefit conferred on it by its unlawful use of the plaintiffs' property. Count III, which also incorporated the previous averments, was characterized as an action to quiet title. It, too, was based on the claim that Comcast had "substantially interfered with one or more exclusive possessory property interests" held by the plaintiffs. Counts II and III sought precisely the same relief as Count I.

The complaint alleged that venue lay in Baltimore County under Maryland Code " § 6–201 *et seq.*" of the Courts and Jud. Proc. Article (CJP) on the theory that "either this jurisdiction is a venue applicable to all Defendants; or, if there is no single venue applicable to all Defendants, one (or more) of them may be sued in this venue" and that each defendant is engaged in "a vocation in this jurisdiction."

The defendants moved to dismiss the complaint on both venue and jurisdictional grounds, and, in the alternative, asked for a more definite statement of facts. As to venue, they asserted that "[c]laims involving distinct properties located in different jurisdictions and owned by different plaintiffs cannot be combined in one jurisdiction." The motion for a more definite statement asked that the plaintiffs be required to state what lines the plaintiffs were complaining about, whether they were above or below ground, whether they were connected to utility poles, and whether the lines originated or terminated on the plaintiffs' properties.

The court conducted a hearing on the motion in January, 2005. At that point, no class had been certified, so the court treated the action as involving only the named plaintiffs—Ms.

Piven, whose property was in Baltimore County, and the Chaplinskis, whose property was in Baltimore City. After hearing from counsel and consulting the relevant statutes, the court found merit in both the venue objection and the request for more definite facts. It concluded that the actions sounded in trespass, which was a local action that had to be brought in the county where the land was located, and that it was impermissible to bring, or join, a claim for trespass to property in Baltimore City in an action in Baltimore County. The court granted the motion to dismiss, but with leave to amend, to provide facts as to the specific properties involved, including whether the Comcast lines are alleged to run over or under the property and what Comcast specifically did to the property. The court made very clear to counsel that the Chaplinskis' claim could not be filed in Baltimore County and that if the Chaplinskis' claim was joined in any amended complaint without a certification of a class, the amended complaint would be dismissed.[2]

The plaintiffs promptly filed an amended complaint that, in most respects, was virtually identical to the initial one. Although there were some additional allegations regarding the various defendants, the Chaplinskis' claim, despite the court's earlier ruling and warning, was once again included. That produced another motion to dismiss which, after a hearing, the court granted, this time without leave to amend. Noting again the fact that no class had been certified (and musing whether, in light of the Class Action Fairness Act of 2005 (Pub.L. No. 109–2, 119 Stat. 4, and, in particular, 28 U.S.C. § 1453), the case would remain in State court if the proposed class *were* to be certified), the court continued to treat the issue as simply whether an action for trespass to real property located in Baltimore City could be filed in Baltimore County, and its answer continued to be "no." In a reported opinion, the Court of Special Appeals affirmed, holding that the issue was governed by CJP § 6–203(b)(1)(iv), which requires that an action

---

2. We need not address here whether *any* of the three counts could be brought as a class action.

for trespass to land be brought in the county where all or any portion of the land is located, and that an action for trespass to land in Baltimore City simply could not be brought in Baltimore County. *Piven v. Comcast,* 168 Md.App. 221, 895 A.2d 1118 (2006). We granted *certiorari* and shall affirm.

### DISCUSSION

The relevant laws relating to venue—where an action may be brought—are set forth in CJP §§ 6–201 through 6–203.[3] Section 6–201 states the general rules that (1) "[s]ubject to the provisions of §§ 6–202 and 6–203" and "unless otherwise provided by law, a civil action shall be brought in a county where the defendant resides, carries on a regular business, is employed, or habitually engages in a vocation," (2) a corporation may also be sued where it maintains its principal offices in the State, and (3) if there is more than one defendant and there is no single venue applicable to all defendants, all may be sued in any county in which any of them could be sued or in the county where the cause of action arose.

Section 6–202 provides some alternative venues in thirteen enumerated situations, only three of which are cited by Piven and the Chaplinskis and bear any mention. Section 6–202(3) permits an action against a corporation which has no principal place of business in the State to be filed in the county where the plaintiff resides; § 6–202(7) permits an action for possession of real property to be filed in a county where a portion of the land upon which the action is based is located; and § 6–202(13) provides that in a local action in which the defendant cannot be found in the county where the subject matter of the action is located, suit may be brought in any county in which venue is proper under § 6–201.

Section 6–203 sets forth certain exceptions to the general rule stated in § 6–201. Section 6–203(b)(1)(iv) provides, in relevant part, that venue in an action of trespass to land is in

---

3. Our references to those statutes are to the current version of them. In 2005, the Legislature made some non-substantive style changes to § 6–203. See 2005 Md. Laws. ch. 464, § 3.

the county where all or any portion of "the subject matter of the action" is located. Section 6–203(b)(2) adds that, if the property lies in more than one county, "the court in which proceedings are first brought has jurisdiction over the entire property." In an action for trespass to land, the "subject matter of the action" is the trespass—the intrusion upon the land and the interference with the plaintiff's alleged right of possession and use of the land—and that necessarily is where the land itself is situated. Under § 6–203, therefore, an action for trespass to land must be brought in the county where all or any portion of the land is located, and it may not be brought anywhere else.

In an effort to escape the clear meaning and intent of § 6–203(b), Piven and the Chaplinskis make essentially two arguments. First, relying largely on *Roessner v. Mitchell,* 122 Md. 460, 89 A. 722 (1914), they treat their unconnected properties (and the unconnected properties of all of the other putative class members) not as the separate "subject matter" of a separate trespass to those individual properties but rather as though each of those parcels comprise but a part of a larger, aggregate "subject matter of the action" that relates to the alleged trespasses to all of the properties. Their point, in this regard, is that the Chaplin skis' property in Baltimore City is merely a portion of a whole that comprises both the Chaplinski and the Piven properties (and the properties of all other putative class members), and that the action could therefore lie in any county in which any of the properties (portions of the whole) are located, either under § 6–203(b) or under §§ 6–201 or 6–202(3), (7), or (13).

The second argument is that, even if the Chaplinskis' action for trespass under Count I of the amended complaint cannot be brought in Baltimore County, Counts II and III constitute transitory, rather than local, actions and may be brought in any county, including Baltimore County, in which any of the multiple defendants could be sued. Neither argument has any merit.

 Maryland has long recognized a distinction between local actions, which must be brought where the subject matter

of the action is located, and transitory actions, which ordinarily may be brought wherever the defendant works, lives, or has a principal office. The Court first explained the derivation and purpose of the distinction in *Crook v. Pitcher*, 61 Md. 510, 513 (1884) and recounted that explanation and provided a broader history in *Kane v. Schulmeyer*, 349 Md. 424, 708 A.2d 1038 (1998). As we observed in *Kane*, the venue doctrine "has an ancient lineage, one that originally was tied to the early, and long-since discarded, role of jurors as knowledgeable witnesses rather than as impartial determiners of fact based on evidence heard in court." *Id.* at 430, 708 A.2d at 1041. It was important, in that earlier time, for plaintiffs to state with precision not just the county but also the particular district or "hundred" within which the cause of action arose, in order that the sheriff might summon as jurors persons who were presumed to be acquainted with the nature of the transaction they were chosen to try.

That requirement, tying venue to the immediate neighborhood where the cause of action arose, continued into the Seventeenth Century in England, but was eventually found inconvenient, especially in transactions that might happen partly in one place and partly in another; "hence," the *Crook v. Pitcher* Court noted, "arose the distinction between local and transitory actions." 61 Md. at 513. The Court explained:

"If the cause of action could only have arisen in a particular place, the action is local, and the suit must be brought in the county or place in which it arose. Actions for damages to real property, actions on the case for nuisances, or for the obstruction of one's right of way, are according to all the authorities local.

On the other hand, actions for injuries to the person, or to personal property, actions on contracts, and in fact all actions founded on transactions, which might have taken place anywhere, are transitory."

*Id.* (citation omitted).

There has been little change over the years to the requirement that a local action be brought where the cause of action

arose. Most of the changes in the venue rules have come by statute and have concerned where transitory actions may be brought. *See Kane, supra,* 349 Md. at 432–34, 708 A.2d at 1042–44. The problem, as the Court observed in *Gunther v. Dranbauer,* 86 Md. 1, 6, 38 A. 33 (1897), was not so much with the elementary principles that local actions must be brought where the cause of action arose while transitory actions may be commenced wherever the defendant works or resides, but rather with the application of those principles, in particular the failure of the law "to clearly distinguish between what are local and what [are] transitory actions."

The Legislature attempted to bring greater clarity to the then-existing hodgepodge of statutes when, in the inaugural debut of modern Code Revision, it enacted CJP §§ 6–201–6–203 in 1973. Unlike with the normal Code Revision process, a number of substantive changes were made when those statutes were enacted, mostly with respect to where transitory actions may be brought. *See Kane v. Schulmeyer, supra,* 349 Md. at 435, 708 A.2d at 1044. No change was made, however, in the law requiring that local actions be brought in the county where the subject matter of the action is located or in the principle that actions for trespass to land are local actions that must be brought where all or a portion of the land is situated. Section 6–203(b)(1)(iv) cannot be read in any other manner.

Piven and the Chaplinskis rely on *Roessner v. Mitchell, supra,* 122 Md. 460, 89 A. 722, for the undergirding proposition that their non-contiguous properties may be considered as constituent portions of an entity comprising both properties, such that a portion of the whole lies in both Baltimore City and Baltimore County and thereby provides venue in either place. As Judge Rodowsky pointed out for the Court of Special Appeals, however, *Roessner* is distinguishable in several respects.

The *Roessner* case arose from a partition sale. Frederick Mitchell, a resident of Baltimore County, owned an undivided half interest in two parcels of real property, one in Baltimore County and one in Washington County. With some complica-

tions that were eventually resolved and are not relevant here, Mitchell's interest in those properties was devised under his Will to his children. The Will was probated in Baltimore County. Because the properties could not be physically divided without loss, the children, all of whom were residents of Baltimore County, petitioned the Circuit Court for Baltimore County to sell the properties in lieu of partition. Without objection, the court entered a decree in August, 1906 directing the sale. For whatever reason, there was a significant delay in the sale of the Washington County property, which was sold in March, 1913 to Roessner. The sale price was $5,000; Roessner made a $300 deposit and agreed to pay the $4,700 balance upon ratification. The sale was ratified in due course, but Roessner refused to pay the balance.

Upon Roessner's default, the sellers sought an order requiring Roessner to comply with the terms of sale and, upon his failure to do so, to direct that the property be resold at his risk. Roessner replied that the court was without jurisdiction to decree the sale of the Washington County property in the first instance because it was unconnected with the Baltimore County property and because none of the parties to the partition proceeding were residents of Washington County. The Circuit Court found no merit in that defense and ordered the property resold at Roessner's risk. Roessner appealed, raising the same argument made in the Circuit Court—that the Baltimore County court was without jurisdiction to order the sale of property in Washington County. He urged that the predecessor statute to CJP § 6–203(b)(2)—Maryland Code (1911) Art. 16, § 87, which provided that where lands lie partly in one county and partly in another, proceedings may be commenced in either county and the court in which proceedings are first commenced has jurisdiction—did not apply where the lands in different counties were not connected.[4]

---

**4.** Section 87 provided, in relevant part, that whenever lands lay partly in one county and partly in another, or whenever, in equity proceedings, some defendants resided in one county and some in another, "that court shall have jurisdiction in which proceedings shall have been first commenced" and that, in partition and certain other enumerated

This Court declined to construe the statute as applying only in cases where lands situated in different counties are contiguous and form one tract. The statute, the Court said, was designed to avoid a multiplicity of suits and the costs attendant thereto. In that vein, the Court construed the statute as meaning that, if the lands to be affected by the suit are in different counties, proceedings could be commenced where any of the land is situated, "and the Court in which the proceedings shall have first commenced shall have jurisdiction as to all of said land without regard to the fact that such lands are contiguous and form one tract or parcel of land." *Id.* at 463–64, 89 A. at 723.

■ As noted by Judge Rodowsky, the issue in *Roessner* was not venue, but jurisdiction, and that is significant. Roessner was collaterally attacking the jurisdiction of the Baltimore County court to order the partition sale of property in Washington County. He was not a party to that proceeding, however, and the decree he attacked was a final judgment that had been entered, by consent of the parties, seven years earlier. Although the two parcels, lying in different counties, were not contiguous, they had been under the common ownership of the parties' predecessor in title, and remained under common ownership by virtue of the predecessor's Will that had been probated in Baltimore County. The interests of all of the parties to the partition action were identical, and all of the parties were resident in Baltimore County. There was a sufficient connection between the Circuit Court for Baltimore County and the interests that the parties before it had in the

---

proceedings, the action "shall be instituted" in the court of the county where the lands lay or, if the lands were partly in one county and partly in another, in either county. The statute further required that, where a court decree ordered the sale of land lying only partly in that county, a certified copy of the complaint, decree, and report of sale be filed in the court where any other part of the land was situated. Upon receipt of those documents, the clerk was to docket and index the complaint and other proceedings "and record the same as though said cause had originated in his court." That apparently was done in *Roessner;* certified copies were filed with the Circuit Court for Washington County.

Washington County property to afford jurisdiction under the statute.

Finally, as we have observed, the statute construed in *Roessner* specifically required that certified copies of the complaint, decree, and report of sale be filed with the clerk of the court in each county where a portion of the land was situate and that the clerk of that court docket and record those documents "the same as though said cause had originated in his court." The statute thus tended to treat the proceeding as though it had commenced as well in each county where the land was located. In that light, it is not surprising that the Court, responding to a jurisdictional challenge, gave an expansive meaning to the statute, to avoid, as it said at 122 Md. at 464, 89 A. at 723, "a multiplicity of suits and the costs and expenses of such suits."

That is not the case here. Those requirements contained in the 1911 statute construed in *Roessner* are not found in §§ 6–202 or 6–203. That omission, coupled with the comprehensive revision of the venue laws in 1973, militates against such an expansive reading of §§ 6–202 and 6–203. The Legislature clearly intended that an action for trespass to a separate parcel of land be brought in the county where all or some part of that parcel is located.

This distinction, which lies at the heart of the distinction between local and transitory actions, precludes Piven and the Chaplinskis from aggregating their separate properties, located in different counties, into a greater whole and regarding them as merely a portion of that whole, and that, in turn, destroys any pretense of venue in Baltimore County with respect to the Chaplinski property under CJP § 6–202 or § 6–203(b)(2). As to § 6–202(3), even if the Comcast defendants that allegedly committed a trespass on the Chaplinski property have no principal place of business in Maryland, the proper venue would still be Baltimore City, where the Chaplinskis reside. That is true as well with § 6–202(7); to the extent the action could in any way be construed as one to recover possession of real property, it could be brought only where a

portion of the land is located, and, as to the Chaplinskis, that is in Baltimore City. Section 6–202(13) has no application, as there has been no allegation that the Comcast defendants "cannot be found" in Baltimore City. An assertion of venue under § 6–203(b)(2) fails because no portion of the Chaplinski property lies in Baltimore County.

■ Finally, Piven and the Chaplinskis urge that, even if the Chaplinskis are precluded from pursuing their trespass action in Baltimore County, they are not precluded from pursuing Counts II and III of their amended complaint, for unjust enrichment and to quiet title, in that county, those being, in their view, transitory actions. We disagree. As Judge Rodowsky observed for the Court of Special Appeals, courts must ordinarily look beyond labels and conclusory averments and make determinations based on the substance of the allegations of a pleading. Counts II and III of the amended complaint are founded solely on an alleged trespass, and they seek precisely the same relief prayed in Count I. They stand no differently, for venue purposes, than Count I.

Ordinarily, the appropriate remedy in a case of this kind would be to transfer the actions by the Chaplinskis to the Circuit Court for Baltimore City pursuant to Maryland Rule 2–327(b) and permit the Piven action to proceed in Baltimore County. That option was offered to the plaintiffs in connection with the initial complaint, and they rejected it. The ability to transfer, rather than dismiss, an action based on a finding of improper venue is discretionary, and in light of the plaintiffs' refusal to avail themselves of that option, and their insistence that the action include the Chaplinskis' claim, we find no abuse of discretion in the court dismissing the amended complaint.

JUDGMENT OF COURT OF SPECIAL APPEALS AFFIRMED, WITH COSTS.